IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AFFILIATES, Inc., HUMAN SERVICE CONNECTION, Inc., H.A.S., Inc., ALTERNATIVE NURSING SERVICES, Inc., A WAY THROUGH COUNSELING CENTER, Inc., CENTRAL IDAHO AFFILIATES, Inc., PROVIDER AFFILIATE AGENCY, Inc., THE RES/HAB PROVIDER AGENCY, LLC, ROBINSON & AFFILIATES, Inc., SCOTT COMMUNITY CARE, PLLC, TOMORROW'S HOPE SATELLITE SERVICES, Inc., WILLIAMS & URALDE, Inc.,<br><br>Plaintiffs,<br><br>v.<br><br>LESLIE CLEMENT, in her official Capacity,<br><br>Defendant. | Case No. 1:11-cv-00417-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Defendant Clement's Motion to Dismiss Plaintiffs' complaint in its entirety, with prejudice. The Court has read and fully considered the briefing and related materials submitted by the parties, and now issues the following Memorandum Decision and Order granting Clement's motion, but with leave for Plaintiffs to file an amended complaint within thirty days.

## BACKGROUND

Plaintiffs belong to a class of private businesses which, under Idaho's implementation of the Medicaid provisions of the Social Security Act, contract with the state to provide "affiliation" services to persons or entities providing residential habilitation to eligible low-income individuals with significant developmental disabilities. 42 U.S.C. § 1396 *et seq*. "Affiliation" includes provision of "oversight, training, and quality assurance" to such persons or entities. IDAPA 16.03.10.705.01. Plaintiffs allege that Defendant Clement, in connection with her role as Medicaid Division Administrator for the Idaho Department of Health and Welfare (IDHW), unlawfully retaliated against them in response to their previous lawsuit naming Clement as a defendant (Case No. 1:09-cv-00149-BLW) by replacing Plaintiffs with a cheaper contractor. No breach of contract is alleged by either side. Clement insists the change was wholly lawful and not the result of any animus towards Plaintiffs.

The parties agree as to most of the material facts contained in Plaintiffs' Complaint. In early January of 2009, IDHW issued an information release stating that, in response to the State's demand for withholdings from agency budgets, it would change the compensation scheme applicable to affiliation service providers. *Compl.* at 5, Dkt 1. Responding to the threat of heavy losses to their businesses, Plaintiffs filed suit to enjoin the change, and won a permanent injunction, dated January 22, 2010, on the ground that IDHW failed to consider non-budgetary factors in making its changes, and hence failed to

comply with the requirements of the Medicaid Act. *Affiliates v. Armstrong,* D. Idaho, Case No. 1:09-cv-00149-BLW ("*Affiliates I*").

Of course, the injunction issued in *Affiliates I* was not the end of the matter. According to the Complaint, on March 9, 2010, Clement "revealed for the first time" that she and IDHW were considering the implementation of so-called "selective contracts," which would potentially result in the replacement of Plaintiffs as affiliation service providers for the state with a single provider, or with several regional providers. *Compl.* at 5-6, Dkt. 1. The record is silent as to any details concerning this revelation, such as how and to whom it was delivered, and evidently IDHW did not act upon it until February of 2011, following a 2010 directive of the Idaho Legislature to review and implement selective contracts. At that time, IDHW began to solicit bids from prospective affiliation service providers interested in taking over the affiliation function on a statewide or regional basis. *Compl.* at 6-7, Dkt. 1; *Def. Mot.* at 21, Dkt. 4. As a result, on June 6, 2011, IDHW selected Community Partnerships of Idaho, Inc. to provide statewide affiliation services, replacing Plaintiffs in that capacity. *Id.* There is no indication in the record that any Plaintiff attempted to bid on the contract.

On July 4 and 5, 2011, this Court heard the motions for preliminary injunction against Plaintiffs here as well as non-party plaintiffs in a related case, *Knapp v. Armstrong*, Case No. 1:11-cv-00307-BLW. The Court granted the injunctions in relevant part because IDHW's contract with Community Partnerships amounted to a compensation rate change, thus raising many of the same concerns as found in *Affiliates I*, and because it was executed prior to securing a required waiver amendment from CMS

(the Centers for Medicare and Medicaid Services). *Affiliates I*, Dkt. 69. Accordingly, the Court made the injunction terminable upon a showing by the Defendants that the amendment was approved by CMS. *Id.* The waiver amendment was granted on October 17, 2011. *Def. Mot.,* Dkt. 4, Withroe Decl. at 2, ¶ 5 & Ex. D. On December 9, 2011, the Court granted the defendant's motion in *Affiliates I* to vacate the injunction, and on January 19, 2012, the Court dismissed the case in its entirety. *Affiliates I*, Dkts. 76, 79. Thus, there is not currently any legal bar to the implementation of IDHW's contract with Community Partnerships.[1]

The present action, a First Amendment retaliation claim brought under 42 U.S.C. § 1983, attacks Clement's attempt to implement the Community Partnerships contract as an effort to punish Plaintiffs for petitioning the government in *Affiliates I*, and to discourage or prevent future exercises of that Constitutional right under like circumstances. Clement moves to dismiss the Complaint on grounds of sovereign immunity under Rule 12(b)(1) of the Federal Rules of Civil Procedure or, in the alternative, under Rule 12(b)(6) for failure to state a claim for which relief may be granted.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic*

---

[1] In light of the dismissal of *Affiliates I* and the termination of its injunction to implementation of the Community Partnerships contract, it should be said that the Court is unaware whether the Plaintiffs have, as of this writing, actually been "replaced" as providers of affiliation services. Given the grounds for the decision here, Plaintiffs' suggestion that this question has legal significance on the issue of sovereign immunity need not concern the Court at this stage of the proceedings.

MEMORANDUM DECISION AND ORDER — 4

*Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*. at 557.

In a more recent case, the Supreme Court identified two "working principles" that underlie *Twombly*. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Id*. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 1950. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009)(issued 2 months after *Iqbal*).[2] The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.,* 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether it "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007)(citations omitted).

Because the Court decides this motion under the pleading standards set forth in *Twombly* and *Iqbal*, it need not decide the sovereign immunity issues raised by the Defendant's Rule 12(b)(1) argument, and will confine its discussion of the issues accordingly.

## ANALYSIS

In order to state a § 1983 claim for retaliation, a party must allege that the

---

[2] The Court has some concern about the continued vitality of the liberal amendment policy adopted in *Harris v. Amgen*, based as it is on language in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), suggesting that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim. . .." Given *Twombly* and *Iqbal*'s rejection of the liberal pleading standards adopted by *Conley,* a question arises whether the liberal amendment policy of *Harris v Amgen* still exists. Nevertheless, the Circuit has continued to apply the liberal amendment policy even after dismissing claims for violating *Iqbal* and *Twombly*. *See Market Trading, Inc. v. AT&T Mobility, LLC*, 2010 WL 2836092 (9th Cir. July 20, 2010) (not for publication). Accordingly, the Court will continue to employ the liberal amendment policy.

Defendant, acting under color of state law, deprived it of a right secured by the First Amendment of the U.S. Constitution, such as the right to petition the government, by an act of retaliation for the prior exercise of such a right. 42 U.S.C.A. § 1983. To make out a claim for retaliation, a party must allege that it (1) engaged in a constitutionally protected activity, (2) as a result of which they were subjected to adverse action severe enough to discourage a person of ordinary firmness from continuing to engage in the activity, and (3) that there was a "substantial causal relationship" between the activity and the adverse action by the defendant. *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). In addition to these basic elements, the 9th Circuit has made clear that, taken in context, certain nominally "retaliatory" acts do not fall within the purview of the First Amendment. *Id.* at 544.[3]

In its current form, the Complaint here is deficient. To be sure, the Complaint provides at least a "formulaic recitation of the elements of a cause of action" for retaliation under *Blair* and § 1983. First, it alleges that Plaintiffs engaged in a constitutionally protected activity, by petitioning the government in *Affiliates I*. Compl. at 8, Dkt. 1  Second, it alleges that the result of this protected activity was the termination of Plaintiffs' business relations with IDHW under color of state law, which is clearly adverse as to Plaintiffs and which would tend to discourage a similarly-situated party of ordinary firmness, such as Community Partnerships, from suing IDHW in the future. *Id.*

---

[3] For example, votes in an internal election cast adversely to a plaintiff-nominee "in retaliation for" the nominee's protected speech against the voters or their positions would not ordinarily raise First Amendment concerns, because "the First Amendment does not succor casualties of the regular functioning of the political process." *Id.* at 545.

Third, it alleges that Clement's move to selectively contract was substantially caused by its desire to retaliate for Plaintiffs' exercise of their First Amendment rights. *Id.* at 9-10.

What is missing from the Complaint, however, is sufficient factual matter, accepted as true, to state a claim for retaliation that is "plausible on its face." *Twombly,* 550 U.S. at 570. Such facts are needed in order to cross the "line between possibility and plausibility." *Id.* at 577. Here, stripped of labels and conclusions, the Complaint alleges merely that Clement, having failed to skin the cat in one way, subsequently attempted to skin it in another. While enough factual matter is alleged to support the *possibility* that Clement's persistence was motivated by a desire to retaliate against Plaintiffs, mere possibility cannot sustain the Complaint.

Plaintiffs' response to this problem is unpersuasive. First, they emphasize that Clement "revealed" the move toward selective contracting prior to the Idaho Legislature's public urging or direction to do so, and argue that the timing of these events exposes, as a false pretext, any claim that the move was prompted by the state legislature rather than a desire to retaliate. *Pl. Resp.* at 8, Dkt. 8. However, when evaluating motions to dismiss, the Court is required to consider the context in which the events in question occurred, based upon the record before it, and to draw upon its judicial experience and common sense. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). There is no dispute that Clement, well before the alleged retaliatory acts took place, was under external pressure to reduce her division's expenditures and that IDHW had institutional experience with selective contracting. *Compl.* at 8, Dkt. 1. Under these circumstances, and in the absence of any countervailing facts in the Complaint, Clement's decision on March 9, 2010 to

MEMORANDUM DECISION AND ORDER — 8

foreshadow IDHW's move toward selective contracting a few weeks prior to the introduction of legislation on the subject in the Idaho Legislature is simply insufficient to support a reasonable inference of retaliatory motive.

Second, Plaintiffs allege that Clement pursued selective contracting only as to those services offered by Plaintiffs and others who participated in *Affiliates I*, ignoring all others; Plaintiffs argue that this narrow targeting evidences retaliation. *Pl. Resp.* at 8, Dkt. 8. This allegation, taken as true, is not incompatible with an act of retaliation. But again, in the absence of additional supporting facts, and considering the context of relevant events and the record as a whole, such a conclusion is simply not plausible. It is undisputed that affiliation services, and hence affiliation service providers, were "targeted" by IDHW for cost reductions well before the alleged retaliatory move to selective contracting was initiated. Thus, the fact that affiliation services, and hence Plaintiffs, continued to be the object of IDHW's attempts to institute expenditure reductions does not support a reasonable inference that they were selected for retaliatory treatment by Clement. Of course, retaliation is a possibility under the facts alleged, but the Court has no duty to reach far beyond those facts to infer conclusions favorable to the Plaintiffs.

However, Plaintiffs are entitled to an attempt to cure the Complaint via amendment. Thus, the Court will allow Plaintiffs thirty days in which to file an amended complaint.

**ORDER**

IT IS ORDERED THAT:

1. Defendant's Motion to Dismiss (Dkt. 4) is GRANTED.

2. Plaintiffs shall have until 30 days from entry of this order to file an amended complaint in keeping with this decision. If no amended complaint is filed by that deadline, judgment will be entered dismissing this matter in its entirety.

DATED: February 7, 2012

B. Lynn Winmill
Chief Judge
United States District Court